CENTRAL OF GEORGIA RY. CO. v. HITCHCOCK et al.

(Circuit Court of Appeals, Fifth Circuit. January 3, 1899.)

No. 764.

RAILROADS—CLAIMS AGAINST RECEIVER—REPAIRS TO ROAD.

Where materials for the repair of a railroad track furnished to the lessee were taken possession of and used in making such repairs by the receivers of the general system of which such line of road formed a part, the seller became a creditor of such receivers therefor; and they are not relieved from liability by the fact that they afterwards surrendered such line of road to a receiver appointed in another suit for that line singly.

Appeal from the Circuit Court of the United States for the Southern District of Georgia.

All of the facts are contained in an agreed statement of facts, which is substantially as follows:

In December, 1891, the Richmond & Danville Railroad Company was operating the Chattanooga, Rome & Columbus Division of the Savannah & Western Railroad Company, under color of a lease made by the Central Railroad & Banking Company of Georgia to the Georgia Pacific Railroad Company. At that time the Central Railroad & Banking Company of Georgia owned all the stock of the Savannah & Western Railroad Company, and transferred, or attempted to transfer, the right to control the properties of the Savannah & Western Railroad Company through said stock to the Georgia Pacific Company, by virtue of the aforesaid lease; and the Georgia Pacific Company, being itself under the control of the Richmond & Danville Railroad Company, had allowed the Richmond & Danville Company to go into the possession of the lines of road controlled by the Central, including the Savannah & Western Railroad Company's lines; and during the said month of December, 1891, the said Richmond & Danville Railroad Company were actually operating the said railroad lines. That on March 4, 1892, the validity of the aforesaid lease and possession was attacked by a bill filed by Rowena M. Clark and others, stockholders of the Central Railroad & Banking Company of Georgia, in this court; and H. M. Comer and the other directors of the Central Railroad & Banking Company of Georgia were appointed receivers of the Central Railroad properties, and went into possession of the Chattanooga, Rome & Columbus Division of the Savannah & Western Railroad Company, as part of the assets and system of the Central Railroad & Banking Company of Georgia. And said receivers continued to operate said Chattanooga, Rome & Columbus Division of the Western Railroad Company, under said stockholders' bill, until the 4th day of July, 1892, when the Central Railroad & Banking Company of Georgia filed an ancillary bill, declaring its inability to meet its matured and maturing obligations; and H. M. Comer was appointed the sole receiver under said ancillary bill, and continued under said stockholders' bill until the 23d day of January, 1893, when the Farmers' Loan & Trust Company of New York, trustee for the bondholders, filed a bill, which

was afterwards consolidated with the bills above mentioned, asking a fore-. closure of a mortgage for $5,000,000 on the main stem of the Central Railroad, between Savannah and Atlanta. On the 30th day of March, 1893, the Central Trust Company of New York, trustee for the bondholders of the Savannah & Western Railroad Company, filed a bill to foreclose a mortgage for $7,000,-000 on the railroad property and assets of the Savannah & Western Railroad Company in the circuit court of the United States for the Middle district of Alabama; and an auxiliary bill of like tenor and effect was also filed in the Southern district of Georgia, and in the Northern district of Georgia; and on the 15th day of May, 1893, H. M. Comer and R. J. Lowry were appointed receivers of the Savannah & Western Railroad Company's property and assets under said several bills filed by said Central Trust Company of New York, and entered upon and operated said Chattanooga, Rome & Columbus Division of the Savannah & Western Railroad Company until the 1st day of February, 1894. Prior to the acquisition of the Chattanooga, Rome & Columbus Railroad by the Savannah & Western Railroad Company, the said Chattanooga, Rome & Columbus Railroad had been built and owned by the Chattanooga, Rome & Columbus Railroad Company, which had issued bonds secured by a mortgage on said railroad, and the Savannah & Western Railroad Company acquired said railroad subject to said antecedent mortgage. That afterwards, to wit, on the ——— day of ———, 1894, the Central Trust Company of New York, as trustee for the said antecedent mortgage bondholders of the Chattanooga, Rome & Columbus Railroad Company, filed a bill in the Northern district of Georgia, in which the said Chattanooga, Rome & Columbus Railroad is wholly situate, to foreclose the said mortgage; and E. E. Jones was, on the said 1st day of February, 1894, appointed receiver under said bill, and went into possession of the said Chattanooga, Rome & Columbus Railroad as such receiver; and Comer and Lowry, who had up to that time operated the said railroad as part of the Savannah & Western Railroad Company's lines, delivered possession of the said Chattanooga, Rome & Columbus Railroad to the said E. E. Jones, who now has possession of the same. That afterwards, to wit, on the 26th day of August, 1895, the aforesaid $7,000,000 mortgage of the Savannah & Western Railroad Company was decreed to be foreclosed, with said amount of accrued interest, in the circuit court of the United States for the Middle district of Alabama; and all of the railroad and properties of the Savannah & Western Railroad Company, other than the Chattanooga, Rome & Columbus Railroad, which had been delivered up to E. E. Jones, receiver, as aforesaid, were sold under the decree of the said court, and bought in for Thomas and Ryan, the purchase price being $1,500,000; and all of the said property so bought having been heretofore delivered to the said Thomas and Ryan, subject to the right of the court to resume possession of said properties if the said Thomas and Ryan, as a condition of receiving said property and the assets of the receivership, should fail to promptly pay off and discharge all the unpaid debts, liabilities, and obligations incurred or owing by the said H. M. Comer and R. J. Lowry, receivers of the Savannah & Western Railroad Company, arising out of their operation of the said railroad property, and all allowed preferential claims superior to the line of the mortgage foreclosed as provided in the supplemental decree of the said circuit court of the Middle district of Alabama, made on the 18th day of January, 1896, and all of the aforesaid decrees entered in the Middle district of Alabama, being likewise made and entered in the auxiliary bills filed in the circuit court of the United States for the Northern and for the Southern district of Georgia.

It is further agreed that during the month of December, 1891, and January and February, 1892, rock and cross-ties were furnished to the Richmond & Danville Railroad Company, then operating the Chattanooga, Rome & Columbus Division of the Savannah & Western Railroad Company, as hereinbefore stated, to the total value of $1,210.31; that all of said cross-ties and material were placed along the lines of the Chattanooga, Rome & Columbus Railroad, and remained there until after March 4, 1892; and that while the Chattanooga, Rome & Columbus Division of the Savannah & Western Railroad Company was being operated by the said H. M. Comer and his co-receivers, under the Rowena M. Clark bill, during the spring and summer of 1892, the said cross-ties and rock which were so distributed along the line of the Chat-

tanooga, Rome & Columbus Railroad were taken by said receivers, and placed in the roadbed of said Chattanooga, Rome & Columbus Railroad; and that the same has never been paid for, either by the said Richmond & Danville Railroad Company, or by the said receivers, or by any one else.

The master found that the receivers of the Central Railroad were not liable, and that the interveners ought to have proceeded against the receivers of the Chattanooga, Rome & Columbus Railroad. Upon exceptions to the master's report, the report was set aside, and a decree entered by the court against the receivers of the Central Railroad & Banking Company of Georgia for the full amount of the interveners' claim. The Central of Georgia Railway Company was made a party defendant in all pending interventions against the receivers, with the right to appeal from any order or decree which might be rendered in such cases; hence this appeal is prosecuted in the name of the Central of Georgia Railway Company. It is claimed that the decree of the circuit court is erroneous, in that the materials for which the appellees sued were used upon the Chattanooga, Rome & Columbus Division of the Savannah & Western Railroad, and the funds of the receivership of the Central Railroad & Banking Company of Georgia should not be charged with said improvements, there being a separate and independent receivership of the Savannah & Western Railroad, and a separate and independent receivership of the Chattanooga, Rome & Columbus Railroad.

F. M. Cunningham, Jr., for appellant.

P. W. Meldrim, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and PAR-LANGE, District Judge.

PARDEE, Circuit Judge. The agreed statement of facts, while giving a history of the several receiverships at different times in control of and operating the Chattanooga, Rome & Columbus Division of the Savannah & Western Railroad, clearly shows that the interveners' cross-ties and rock ballast were converted and appropriated by H. M. Comer and his associates, at that time receivers of the whole Georgia Central Railroad System, then including the Savannah & Western Railroad. From such appropriation and conversion it follows that the said Comer and his associates became and were indebted to the interveners for the value of the cross-ties and rock upon an implied assumpsit; they had taken and converted the interveners' goods, and owed for the same. This liability once having attached, it is difficult to see how Comer and his associates were relieved therefrom by the subsequent proceedings. That the cross-ties and rock were used by Comer and his associates to permanently improve the Chattanooga, Rome & Columbus Railroad, which railroad property subsequently passed into the hands of other receivers in other courts, could not deprive the interveners of the right to look to their original debtor.

From the facts stated, it does not follow that the subsequent receivers of the Chattanooga, Rome & Columbus Railroad became liable to pay for improvements made by Comer and his associates. Such liability could only result in favor of interveners, if the claims for materials furnished for permanent improvements were preferential claims. As between the receivers, such liability could only be ascertained by an accounting which would include all the improvements made upon the property in connection with the revenues and operating expenses pending the Comer receivership. There is no good reason why the interveners should, even if sure of final recovery, be put to the ex-

pense and trouble of compelling such accounting. They have a right to look to their immediate debtors without troubling themselves to pursue parties in other courts who may, in equity, be ultimately liable to account to their debtor. The appellant relies upon the case of Comer v. Polk Co., 27 C. C. A. 1, 81 Fed. 921, recently decided in this court, in which it was held that taxes against a railroad could not be collected from receivers who had the control and management of the property during part of the years for which such taxes were assessed, but whose connection with the road had ceased, except in an equitable proceeding, and upon proof that they have assets of such railroad in their hands, or have diverted its revenues. Comer v. Polk Co. presented an entirely different case from the one in hand. The alleged liability of the receiver in that case was not charged as arising upon any contract, express or implied. The debt sued for was a debt of the property, and not necessarily an obligation of the receivers. The decree appealed from is affirmed, with costs.